IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EUGENE BLACK | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SOUTHEASTERN PENNSYLVANIA | : | |
| TRANSPORTATION AUTHORITY | : | NO. 05-3411 |

**MEMORANDUM AND ORDER**

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE           September    20   , 2006

      The Defendant has filed for summary judgment in this case in which the Plaintiff alleges age and race discrimination, retaliation, and a hostile work environment.  In response, the Plaintiff concedes that the facts of the case do not support a claim for age discrimination.  Therefore, we will grant the Defendant's motion with respect to that claim.  However, issues of material fact remain with respect to the remaining claims, barring summary judgment.

**FACTS**

      The Plaintiff, an African American man born in May, 1960, began working for SEPTA as a computer operator in 1990.  In January, 1994, Plaintiff was promoted to the position of computer operator shift supervisor.  At all times relevant to his claims, the Plaintiff reported to the Manager for Computer Operations for Septa, Thathil George, an Asian American.  Mr. George reported to Bruce McKenzie, who reported to Ralph Manzano.  Both Mssrs. McKenzie and Manzano are Caucasian.  As a Shift Supervisor, Plaintiff's job duties included monitoring and operating the mainframe computer, processing payroll, running jobs, running backups, manning the help desk, and responding to calls from users.

      Although no formal written reprimands were filed against the Plaintiff, he claims that Mr. George began a series of actions constituting harassment and discrimination, including: unfair

and unwarranted negative performance evaluations (Black Dep., at 85); disparaging and sarcastic remarks about Plaintiff's work performance; unreasonable work assignments; falsely accusing Plaintiff of acts committed by other employees (Black Dep., at 67); unwarranted verbal discipline/reprimands (Black Dep., at 57); and holding Plaintiff's work to a higher standard than other employees, not of Plaintiff's race. (Response to Motion, at 3-4). In addition, Mr. Black alleges that Mr. George has told him on more than one occasion that he didn't know his place. (Black Dep., at 80). The Plaintiff discussed his concerns with Mr. McKenzie on 2-4 occasions and Mr. McKenzie said that he would talk to Mr. George. (Black Dep., at 121). Yet, no one got back to Mr. Black and the harassment continued. (Black Dep., at 122).

In late 1999 - early 2000, Plaintiff applied for a Network Services Specialist Job, which had been posted by Septa. The position would have been a promotion for the Plaintiff. Septa received more than 50 resumes from people seeking to fill the position. Eight candidates, including Mr. Black, were chosen for interviews. As stated in the job listing, the Network Services Specialist was responsible for network installation and service, ensuring continuous availability of the network and computing resources, installing and configuring computers and networks, diagnosing and repairing network hardware and wiring. (Requisition for Personnel). Ultimately, Plaintiff was not chosen for the position. Instead, the position was first offered to Lan Tran, an Asian American, who had worked as an outside contractor for Septa. Mr. Tran was not hired because he failed to pass the physical. The position was then offered to Frank Saraceno, a Caucasian, who was hired for the position in April, 2000.

Plaintiff claims that the decision not to hire him for the position was based on his race and in retaliation for his complaints about Mr. George. The Defendant contends that Plaintiff

lacked the experience in networking that was required for the position. After being denied the Network Services position, Mr. Black went to Mr. McKenzie and complained that he was being discriminated against. (Black Dep., at 228).

In August of 2000, Plaintiff first made an inquiry at the Pennsylvania Human Relations Commission by completing a General Questionnaire and requesting the PHRC to investigate his complaints of discrimination. On November 2, 2000, Plaintiff filed a Complaint with the PHRC.

On July 1, 2005, Black filed this suit in federal court, alleging age and race discrimination, retaliation, and a hostile work environment.

**LEGAL STANDARD**

Summary judgment is warranted where the pleadings and discovery, as well as any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pr. 56. The moving party has the burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, supra at 325; Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn from it in favor of the non-moving party. Anderson v. Liberty Lobby, supra at 255; Tiggs Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987). Nevertheless, Rule 56 "mandates the entry of summary judgment ... against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra, at 323.

**DISCUSSION**

Administrative Exhaustion

The Defendant first contends that the Plaintiff failed to exhaust his administrative remedies with respect to his allegations of a hostile work environment and retaliation.[1] Before filing suit, alleging a Title VII violation and a violation of the Pennsylvania Human Relations Act, the Plaintiff must present the claim in an administrative charge. Antol v. Perry, 82 F.3d 1291, 1295-96 (3d Cir.1996) (plaintiff must exhaust Title VII claims); Fakete v. Aetna, Inc., 152 F.Supp.2d 722, 731 (E.D.Pa.2001) (plaintiff must exhaust PHRA and ADEA claims).

Here, the only enumerated charge brought by the Plaintiff in his PHRA Complaint is race discrimination. (PHRC Complaint, at 2). However, "[t]he scope of the judicial complaint is not limited to the four corners of the administrative charge." Nerosa v. Storecast Merchandising Corp., 02-440, 2002 WL 1998181 *3 (E.D. Pa. Aug. 28, 2002)(citing Love v. Pullman, 404 U.S. 522, 527 (1972)). The claims will be considered exhausted if they are "reasonably within the scope of the complainant's original charge" or "if a reasonable investigation by the [agency] would have encompassed the new claims." Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984).

Looking at the facts alleged in the administrative complaint and in the original

---

[1] The Defendant also contends that the Plaintiff failed to exhaust his administrative remedies with respect to his claim of age discrimination. Because the Plaintiff has agreed to the dismissal of this claim, we will not address the Defendant's argument with respect to the ADEA.

questionnaire that Mr. Black completed for the PHRC, we believe that both the retaliation and hostile work environment claims were within the scope of the original charge. Although the Plaintiff mentions only race discrimination in the Complaint, he specifically referenced retaliation in the General Questionnaire for the PHRC.

> I feel I was not promoted due in part because of my race. More so, the mentality of those in charge, with regard to my race and retaliation for complaining about my Manager.

(General Questionnaire, at 2). In addition, Mr. Black refers to the many instances of alleged harassment and disparate treatment he has endured at the hands of Mr. George, the same instances he presents in his federal complaint and in his response to the summary judgment motion. (General Questionnaire, Added Details Section).

Thus, contrary to the Defendant's assertion in its summary judgment motion, we find that the Plaintiff did set forth facts in his administrative complaint that would have caused the PHRC to investigate a retaliation claim and a hostile work environment claim.

Timeliness

The Defendant next claims that the Plaintiff's state law claims are time barred because the PHRC Complaint was not timely filed. The Pennsylvania Human Relations Act requires that an administrative complaint be filed with the PHRC within 180 days of the alleged act of discrimination. 43 P.S. § 959(h). The Pennsylvania Courts have strictly interpreted this requirement. See Vincent v. Fuller Co., 616 A.2d 969, 974 (Pa. 1992)("[P]ersons with claims that are cognizable under the Human Relations Act must avail themselves of the administrative process of the Commission or be barred from the judicial remedies authorized in Section 12(c) of the Act.").

The question before this court is whether the verified intake questionnaire was sufficient to constitute filing or to toll the limitations period. Looking at the language of the PHRC, we conclude that it was. The PHRC requires that an aggrieved person "make, sign and file with the Commission a verified complaint, in writing," stating the name and address of the person or employer who committed the discriminatory practice complained of and the particulars of the allegedly discriminatory act or practice. 43 P.S. 959(a). The verified General Questionnaire fulfills these requirements.

Furthermore, we find support for this conclusion in both the state and federal caselaw. As previously mentioned, the Pennsylvania Supreme Court has found that aggrieved parties must "avail themselves of the administrative process." Vincent, supra. The Plaintiff clearly did so by filing the details of his complaint in the verified questionnaire. The Pennsylvania Supreme Court's decision in PHRC v. School District of Philadelphia, 562 A.2d 313 (Pa. 1989), also lends support to our conclusion. In PHRC v. School District, a split Supreme Court of Pennsylvania affirmed the Commonwealth Court's dismissal of a discrimination charge where the complainant had filed an *unverified* questionnaire, later supplementing it with a verified complaint. The Court focused on the fact that the original questionnaire had been unverified. Justice Zappala, joined by two other justices, reasoned that "[a] filing which does not comply with [the] strictures [of the Act] improperly invokes the Commission's jurisdiction, and is in fact a nullity." Id. at 314. Because Mr. Black's General Questionnaire was verified, we believe Justice Zappala would find it copacetic.

The judges of this district court have also found that a verified EEOC intake questionnaire will suffice to constitute a charge of discrimination or toll the 300 day EEO statute

of limitations.  Zysk v. FFE Minerals USA, Inc., 225 F.Supp.2d 482, 490 (E.D. Pa. 2001)(VanAntwerpen, J.); Ricciardi v. Consolidated Rail Corp., 2000 WL 1456736 at *2 (E.D.Pa. Sept.29, 2000)(Shapiro, J.); Bullock v. Balis & Co., Inc., 1999 WL 527792 at *2 (E.D.Pa. July 22, 1999)(McGirr Kelly, J.).  Thus, we conclude that Plaintiff's PHRC complaint of discrimination was timely filed.

      Retaliation - *Prima Facie* Case

To establish a *prima facie* case of retaliation, the Plaintiff must show that: (1) he engaged in a protected activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action.  Igwe v. E.I. Dupont de Nemours & Co., No. 05-1626, 2006 WL 1302633 *1 (3d Cir. May 11, 2006)(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  "The anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings . . . and those who oppose discrimination made unlawful by Title VII."  Moore v. City of Philadelphia, __ F.3d __, 2006 WL 2492256 * 7 (3d Cir. Aug. 30, 2006)(citing Slagle v. County of Clarion, 435 F.3d 262, 266 (3d Cir. 2006)).  Mere objection to working conditions is insufficient to raise the specter of retaliation.  See Walden v. Georgia-Pacific Corp., 126 F.3d 506, 512 n.4 (3d Cir. 1997).

Although the Defendant agrees that Plaintiff complained to Mr. McKenzie about certain working conditions prior to the time the Network Specialist position was filled, the Defendant, relying on a excerpt of Mr. Black's deposition, argues that Mr. Black never complained of race discrimination prior to the time he was not selected to fill the Network Specialist position.  Specifically, in Mr. Black's deposition, the following exchange took place:

> Q. Okay. Before you went to the EEOC office and SEPTA regarding this job, did you ever raise that with anyone at SEPTA that you felt you were being discriminated against on the basis of your race?
>
> A. I believe I spoke to Bruce [McKenzie] about that and I used the word "discriminated".
>
> Q. When did you do that?
>
> A. I'm not sure if it was when we were talking about why I didn't get the position or several months after that, but I would say it was in – what year was that, 2000, 2001.
>
> Q. So, with regard to your discussion of race discrimination with Mr. McKenzie, that had to do with your failure to get the Network Services job; is that correct?
>
> A. Not necessarily. It had to do with the whole – the work environment.
>
> Q. Okay. Was there another occasion where you complained to Mr. McKenzie and raised your race as an issue?
>
> A. No.

(Black Dep., at 228).

If this were the only discussion of discrimination in Mr. Black's deposition, we would agree with the Defendant's position that Plaintiff had not engaged in any protected activity prior to being the victim of an adverse employment action. However, earlier in the deposition, Mr. Black stated that he had complained to Mr. McKenzie about the tone of some emails that he had received from Mr. George. (Black Dep., at 121).

> A. There were a couple of emails that were very hot and very – the wording wasn't necessary and I discussed it with Bruce [McKenzie]. At the time, he agreed and said he would talk to George, but, again, I never heard anything about it after our discussion.
>
> Q. So, you didn't like the tone of the emails you received; is that correct?
>
> A. I didn't believe they needed to be expressed the way they were.

> Q. How many times do you remember talking to Mr. McKenzie about the emails?
>
> A. I think possibly three or four times – two or three times.

(Black Dep., at 121). Later in the deposition, when discussing the emails of which Mr. Black complained, the issue of discrimination was discussed.

> Q. In any of the emails that we've talked about, did Mr. George refer to you in derogatory terms?
>
> A. No, I don't think so.
>
> Q. Did he ever raise your race as an issue in any of the emails?
>
> A. I'm sorry?
>
> Q. Did he ever raise your race as an issue in any of the emails?
>
> A. Specifically saying something about my race?
>
> Q. Yes.
>
> A. I don't know. It depends on how me not knowing my place, how you would view that. I viewed it as racial.

(Black Dep., at 123-24). We find that complaining about the tone of emails written by a direct supervisor that could be read to implicate one's race is sufficient to constitute protected activity. Since these complaints pre-dated Plaintiff's failure to get the Network Services Specialist job, the retaliation claim stands.

Racially Hostile Work Environment

To establish a hostile work environment, Plaintiff must show "harassing behavior 'sufficiently severe or pervasive to alter the conditions of their employment'" Pennsylvania State Police v. Suders, 542 U.S. 129 (2004)(quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). The Defendant claims that Plaintiff has failed to establish that any discrimination

or harassment was severe or pervasive.

The Defendant begins by noting that Mr. Black and his supervisor work different shifts and see each other only 1-2 times a year. (Defendant's Motion, at 23). We are not convinced that just because Mr. Black does not have daily, face-to-face interaction with Mr. George, Mr. George's actions could not create a hostile work environment.

The Defendant next argues that the Plaintiff's complaints are merely "petty work disputes" which are not discriminatory in nature. We begin by listing the Plaintiff's complaints regarding Mr. George: (1) Plaintiff claims that Mr. George improperly denied him overtime (Black Dep., at 72-73); (2) Mr. George wrongfully accused him of altering an overtime sign-up sheet (Black Dep., at 67); (3) Mr. George gave Plaintiff lower performance evaluations than he expected/deserved (Black Dep., at 84); (4) Mr. George reprimanded Plaintiff for a problem at work that was not caused by Plaintiff (Black Dep., at 76); (5) Mr. George told Plaintiff to take his job more seriously or there would be consequences (Black Dep., at 77); (6) on several occasions, Mr. George verbally reprimanded Plaintiff for failing to complete trouble-shooting reports when Mr. Black explained that he prefers to solve the problem before completing the paperwork (Black Dep., at 78); (7) Mr. George requested a doctor's note from Mr. Black when he was absent despite the fact that he did not require the same from other employees (Black Dep., 245); (8) on at least three occasions, Mr. George told Plaintiff that he did not know his place (Black Dep., at 80); (9) Mr. George reassigned work from Plaintiff, undermining Plaintiff's authority with his subordinates (Black Dep., at 80); and (10) in discussing these issues, Mr. George sent Mr. Black emails that upset Plaintiff because of their tone.

To the extent the defense argues that the Plaintiff has failed to show that the complaints

involve actions which were discriminatory in nature, we disagree.  Viewed in the light most favorable to the Plaintiff, Mr. George's statement about Plaintiff not knowing his place, can be viewed as a racially-motivated comment.  With the taint of this comment, Mr. George's other actions could be seen as racially motivated.

We also reject the defense argument that the actions about which the Plaintiff complains were not severe and pervasive enough to constitute a hostile work environment.  To the contrary, viewed in the light most favorable to the Plaintiff, some of Mr. George's actions had long lasting ramifications.  For example, Mr. Black testified that Mr. George's reassigning work from Plaintiff and his team to another shift undermined his authority with his subordinates.  (Black Dep., at 80).   Therefore, we will deny the Defendant's motion with respect to the hostile work environment.

### Race Discrimination - *Prima Facie* Case

In order to succeed with his discrimination claim based on the failure to promote him to the Network Specialist position, the Plaintiff must establish that: (1) he is a member of a protected class; (2) that he was qualified for the position at issue; and (3) that the employer ultimately filled the position with someone who was not in Plaintiff's protected class.  Barber v. CSX, 68 F.3d 694, 698 (3d Cir. 1995).  Here, the Defendant contends that the Plaintiff cannot establish that he was qualified for the Network Specialist position.  We find that material issues of fact bar summary judgment on this point.

The Defendant argues that the Plaintiff was not qualified for the position.  According to Mr. McKenzie and Mr. Bazis, to whom the Network Specialist would report, the Plaintiff's experience with Septa's mainframe computer system did not qualify him for the responsibilities

of the Network Specialist, who was responsible for PC based operations. (Bazis Dep., at 39, 68, 93-94; McKenzie Dep., at 125-26).

On the other hand, the Plaintiff has offered the testimony of Portia Brister, who is, herself, a Network Services Specialist for Septa. Ms. Brister concluded that Plaintiff was qualified for the position because the position required both work on the mainframe and PC networking. (Brister Dep., at 23-24). Ms. Brister pointed out that Mr. Black obviously had the mainframe experience, but also had worked another job, supporting desktop computers and networking. (Brister Dep., at 24). In addition, Mr. Black had completed courses in network support, including Microsoft certifications. (Brister Dep., at 24). Additionally, the Plaintiff offers the testimony of Charles Crudele, a former Network Services Specialist at Septa. Mr. Crudele was familiar with Mr. Black and concluded that his familiarity with the mainframe, combined with his experience as a PC support person outside of Septa and his providing user support the mainframe, would make him a good candidate for the job. (Crudele Dep., at 20).

Although the Defendants argue that the Plaintiff overstated his PC experience in his application for the Network Specialist position, we believe that Plaintiff's qualifications present a material issue of fact to be decided by the jury.

### Race Discrimination - Legitimate Reason

After the Plaintiff has met his burden with respect to the *prima facie* case, the burden shifts to the employer to set forth a legitimate, non-discriminatory reason for making its hiring decision. McDonnell Douglas Corp. v. Green, 411 U.S.792, 802-03 (1973). In an argument related to the previous contention that the Plaintiff was not qualified for the position, the defense argues that it had a legitimate, non-discriminatory reason for its hiring decision – the other

candidates were more qualified for the position

 Here, the Defendant, recounting the interviewing process and selection process it utilized, argues that when the qualifications of the three top candidates were compared, Mr. Tran and Mr. Saraceno were more qualified for the Network Specialist position than Mr. Black.  Again, we find that the questions involving Mr. Black's qualifications, along with those of Mssrs. Tran and Saraceno are best left for the jury.  Material issues of fact remain regarding the qualifications necessary for the job and the qualifications each of the candidates possessed.

 <u>Race Discrimination - Pretext</u>

 In its final argument, the Defendant contends that the Plaintiff has failed to establish that its reason for selecting Mr. Tran and Mr. Saraceno over Mr. Black was pretextual.[2]  Once the defendant has articulated a non-discriminatory basis for its hiring decision, the burden shifts back to the Plaintiff to present evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve the employer's reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.  <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994).  To meet his burden, the Plaintiff must offer evidence that would allow the fact-finder to reasonably infer that "*each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action."  <u>Id</u>.  The Plaintiff must present evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable fact-finder could rationally find

---

[2]Although we have determined that issues of material fact remain regarding the reason given by the Defendant for offering the job to Mr. Tran and Mr. Saraceno over Mr. Black, we will proceed to address the Defendant's argument regarding pretext.

them unworthy of credence." Id.

Based on the evidence presented in opposition to the summary judgment motion, we believe there is sufficient evidence from which the jury could reasonably determine that the ranking of the candidates was pretextual.  First, the job listing specifies that "work experience in mainframe network operations" is necessary.  See Septa Career Opportunities Job Listing.  It is clear that Mr. Black had experience with the mainframe.  It is unclear whether his experience included mainframe network operations.  It appears that neither Mr. Tran nor Mr. Saraceno had much mainframe experience, if any.  (Panel Interview Questions, Question 4).  Despite the job listing stating that mainframe networking was necessary, in their depositions, Mssrs. McKenzie and Bazis downplayed the need for mainframe experience and attempted to distinguish the type of work Mr. Black performed from that required by the Network Services Specialist.  (McKenzie Dep., at 125-26; Bazis Dep., at 93).

The Plaintiff also points to evidence that could support the theory that Lan Tran was preselected to fill the position.  Mr. Tran's application was accepted even though it was not submitted until well after the close of the application process.  (Carpenter Dep., at 30-31).  Both Ms. Brister and Mr. Crudele, who were Network Services Specialists at the time, testified that Mike Snee, the supervisor, stated that Mr. Tran was going to be selected for the job prior to the selection, despite the fact that people who worked in the department did not consider Mr. Tran qualified for the position because they had already been correcting his errors when he worked as an outside contractor.  (Brister Dep., at 21-22; Crudele Dep., at 16; McCann Dep., at 36).

Based on this record, we believe there is sufficient evidence for the factfinder to disbelieve Septa's articulated reason for its hiring decision.  Combined with the facts underlying

Mr. Black's hostile work environment claim, it is possible that the jury could determine that an invidious discriminatory reason motivated Septa's actions.  Thus, we will deny the Defendant's motion with respect to the race discrimination claim.

      An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EUGENE BLACK | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SOUTHEASTERN PENNSYLVANIA | : | |
| TRANSPORTATION AUTHORITY | : | NO. 05-3411 |

**O R D E R**

AND NOW, this 20th day of September, 2006, upon consideration of the Defendant's Motion for Summary Judgment, the response, thereto, all the exhibits, and for the reasons stated in the accompanying Memorandum, IT IS HEREBY ORDERED that the Motion is GRANTED IN PART and DENIED IN PART. With respect to the Plaintiff's age discrimination claim, the Motion is GRANTED. The motion is DENIED in all other respects.

BY THE COURT:


/s/Jacob P. Hart
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE